# IN THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | |
|---|---|
| JEREMY BILLMAN | ) |
| | ) |
|     **Plaintiff,** | ) |
| | )    **Case No.** |
| v. | ) |
| | )    **JURY DEMAND** |
| SHAMAS LEWIS | ) |
| (in his individual capacity) and | ) |
| JAGGAR THOMPSON | ) |
| (in his individual capacity) | ) |
| | ) |
|     **Defendants.** | ) |

## COMPLAINT

Plaintiff Jeremy Billman was falsely arrested, unlawfully detained, and maliciously prosecuted for the alleged crimes of felony evading arrest, reckless endangerment, aggravated reckless driving, drug paraphernalia possession, criminal littering, and speeding—charges of which he was wholly and demonstrably innocent. The arrest and prosecution were the result of actions taken by Defendants Shamas Lewis and Jaggar Thompson, police officers for the City of Clifton, Tennessee. Plaintiff brings this suit under 42 USC § 1983.

## PARTIES

1. Plaintiff Jeremy Billman is a citizen of Wayne County, Tennessee.

2. Defendant Shamas Lewis is a citizen of Hardin County, Tennessee.

3. Defendant Lewis is an officer with the City of Clifton, Tennessee Police Department.

4. At all times, Defendant Lewis acted under the color of law in his role as a City of Clifton police officer.

5. Defendant Jaggar Thompson is a citizen of Wayne County, Tennessee.

6. Defendant Thompson is an officer with the City of Clifton, Tennessee Police Department.

7. At all times, Defendant Thompson acted under the color of the law in his role as a City of Clifton police officer.

## **JURISDICTION**

8. This action arises under the United States Constitution and under the laws of the United States of America, particularly under the provisions of the Fourth and Fourteenth Amendments of the United States Constitution, and particularly under the Civil Rights Act, codified at 42 U.S.C. § 1983 et seq.

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### a) The Vehicle Chase

11. On May 24, 2025, Jeremy Billman's grey 2022 Nissan Xterra was taken from his home in Waynesboro, Tennessee without his knowledge or authorization.

12. At approximately 3:08 p.m., Defendant Shamas Lewis was sitting stationary at Clifton City Park when he observed a 2022 grey Nissan Xterra traveling at a high rate of speed.

13. Defendant Lewis attempted to stop the Xterra, but the driver fled and drove recklessly through Clifton before abandoning the vehicle at 5290 Morrison Creek Road and fleeing on foot into the woods.

14. The driver was wearing light-colored pants and a hat.

15. Defendant Lewis chased the driver for about 50 yards but stopped because of the terrain.

16. Defendant Lewis never apprehended the driver.

17. Defendant Lewis returned to his patrol car and determined that the vehicle was registered to Mr. Billman.

18. When Defendant Lewis returned to the police station, he looked up a picture of Mr. Billman and wrote in his Incident Report: "That was when I was able to positively identify the subject that ran from me on foot as the owner [Mr. Billman]."

19. In his Incident Report, Defendant Lewis noted only that the driver was a "white male" wearing "light-colored pants with a hat."

3

20. The report does not state that Defendant Lewis ever observed the driver's face and contains no description of the driver's facial features, height, weight, build, or hair color.

**b) The Arrest of Jeremy Billman.**

21. After returning to the police department, Defendant Lewis received a call from Mr. Billman reporting that someone had taken his vehicle from his home without his authorization or consent.

22. Defendant Lewis told Mr. Billman that the Clifton Police Department had possession of the vehicle.

23. Mr. Billman arrived at City Hall around 5:00 p.m. – about 2 hours after the police chase – to retrieve his vehicle.

24. When Mr. Billman arrived, he was taken into custody by the City of Clifton Police Department.

25. When he arrived, he was not wearing a hat or light-colored pants; and he did not have a beard.

26. Mr. Billman explained that his vehicle had been taken without his consent, that he was not involved in the police chase earlier that day, and that he had been at a friend's house during the chase.

27. City of Clifton Police Officer Steven Haddock transported Mr. Billman to the Wayne County Jail.

28. At the jail, Officer Haddock sent Defendant Lewis a picture of Mr. Billman.

4

29. Defendant Lewis again determined that he was able to positively identify Mr. Billman as the driver who fled from him on foot.

30. Neither Defendant Lewis nor Defendant Haddock took any steps to verify Mr. Billman's account or investigate his alibi.

### c) Officer Lewis's Affidavits of Complaint.

31. The Affidavits of Complaint, sworn by Defendant Lewis, asserted that Mr. Billman had committed the crimes of felony evading arrest, reckless endangerment, aggravated reckless driving, speeding, drug paraphernalia possession, and criminal littering on May 24, 2025.

32. The Affidavits stated identical facts for each charge.

33. Regarding Defendant Lewis' basis for identifying the driver, the Affidavits simply stated: "The vehicle then stopped and a white male exited the vehicle and ran … I did Identify the Driver."

34. The Affidavits stated no facts explaining the basis for Defendant Lewis's purported identification of Mr. Billman as the driver.

35. The Affidavits contained no description matching Mr. Billman's physical appearance to the fleeing driver.

36. The Affidavits contained no corroborating evidence connecting Mr. Billman to the charged offenses.

37. In the Affidavits, Defendant Lewis omitted that he chased the driver on foot for about 50 yards, stopped because of the terrain, never apprehended him, and never saw his face.

5

38. In the Affidavits, Defendant Lewis omitted that Mr. Billman had reported his vehicle stolen; had voluntarily arrived at the police station to retrieve the vehicle; and had stated that he was at a friend's house at the time of the chase.

39. In the Affidavits, Defendant Lewis omitted that Mr. Billman was *not* wearing a hat or light-colored pants — the only physical descriptors attributed to the driver – when he arrived to retrieve his vehicle.

**d) The Imprisonment of Jeremy Billman.**

40. Mr. Billman was confined at around 7:20 p.m. on May 24, 2025.

41. Below is Mr. Billman's "mugshot" taken at the Wayne County Jail on May 24, 2025:



42. He remained imprisoned at the Wayne County Jail for total of five days, from May 24, 2025 until May 28, 2025.

43. Mr. Billman was imprisoned alone in a windowless cell with the lights kept on continuously. He was provided a sleeping mat with no pillow.

44. Mr. Billman is a military veteran. He spent Memorial Day weekend in the Wayne County Jail.

45. Mr. Billman's mother, Laura Billman, paid a $10,000 cash bond to secure his release on May 28, 2025.

46. Mr. Billman's arrest was published in the Wayne County News arrest report.

**e) Officer Lewis's Supplemental Incident Report.**

47. After Mr. Billman's arrest, Officer Lewis supplemented his Incident Report with a description of his review of surveillance footage from the Crosseyed Cricket.

48. Officer Lewis wrote: "After further investigation. I was able to obtain several videos of Billman inside The Crosseyed Cricket gas station … Billman was wearing light-colored pants with a hat. The video also shows Billman getting into the Grey [Xterra]. All video shows before the chase."

49. The Cricket had provided Officer Lewis with video footage that showed Mr. Billman at the store on May 24, 2025 – the day of the chase.

50. The footage was recorded several hours before the chase occurred.

51. When Defendant Lewis wrote in his report that the footage showed Mr. Billman "prior to the chase," he had not confirmed – and did not disclose – how long before the chase the footage was recorded.

52. In the footage, Mr. Billman was not wearing a hat or light-colored pants.

53. Defendant Lewis's statement that Mr. Billman was wearing light-colored pants and a hat in the footage was false. The video footage showed the opposite.

54. Defendant Lewis made these false statements and omissions knowingly or with reckless disregard for the truth and with the intent to sustain the prosecution of Mr. Billman.

**f) Officer Thompson's Attempts to Procure False Witness Statements.**

55. After Mr. Billman was released on bond, he remained subject to the pending felony charges.

56. After Mr. Billman's release, Defendant Jaggar Thompson visited the Crosseyed Cricket and presented two employees with paperwork seeking their signatures confirming that they had witnessed Mr. Billman at the store during the time of the chase on May 24, 2025.

57. The employees, who had not been working at the store on the day of the chase, told Officer Thompson that they could not sign a statement about something they had not witnessed. Instead, they offered to provide surveillance footage from around the time of the chase if Officer Thompson would share the relevant time frame.

58. Officer Thompson responded: "It doesn't really matter as long as you sign the paperwork."

59. Officer Thompson never asked for the surveillance video from around the time of the chase and did not provide the employees with the relevant timeframe.

60. After Officer Thompson left the store, one of the Cricket employees contacted Mr. Billman to request the relevant timeframe for the chase.

61. With that information, the employee requested that the owner of the Cricket review the surveillance footage to see if Mr. Billman's vehicle was visible at the relevant time.

62. The owner of the Cricket located surveillance footage from around the time of the chase which showed Mr. Billman's vehicle at the Crosseyed Cricket.

63. This footage showed a man with light-colored pants, a hat, and a large beard purchasing items inside the store and returning to Mr. Billman's vehicle.

64. Below is a screenshot of the footage of the bearded man inside the Crosseyed Cricket:



65. The bearded man was wearing light-colored pants and a hat – matching Defendant Lewis's description of the fleeing driver.

66. The bearded man was visibly different in appearance from Mr. Billman, who was clean shaven at all times on May 24, 2025, including in the video showing Mr. Billman at the Crosseyed Cricket on that day.

67. The owner of the Cricket sent the video footage of the bearded man to the Clifton Police Department.

68. Neither Defendant Lewis nor anyone from the City of Clifton had reviewed this video footage until the Cricket employee requested it following Officer Thompson's attempt to procure false witness statements.

69. On May 31, 2025, Defendant Thompson informed Mr. Billman that the charges against him would be dropped.

70. During this conversation, Defendant Thompson stated that the "rag heads" at Crosseyed Cricket "had screwed up" and provided Defendant Lewis with the wrong videos.

71. All criminal charges against Mr. Billman were dismissed via *nolle prosequi* on June 3, 2025, after the Crosseyed Cricket surveillance footage depicting the bearded man – not Mr. Billman – was provided to the Clifton Police Department.

72. On July 31, 2025, the District Attorney for Wayne County charged Steven Pulley – the bearded man in the footage – with felony evading arrest, reckless endangerment, and speeding.

73. Below is the "mugshot" of Steven Pulley taken at the Wayne County Jail on June 1, 2025:



**g) Mr. Billman's Damages.**

74. Mr. Billman served in the United States Army from March 2004 to March 2005 and from December 2009 to July 2010, including service during the Gulf War Era.

75. During his service, Mr. Billman sustained an in-service assault resulting in concussion and subdural hematoma. He subsequently developed chronic mental health symptoms including sleep disturbance, nightmares, depression, anxiety, panic attacks, impaired concentration, and difficulty maintaining employment and relationships.

76. On October 10, 2025, approximately four and half months after his false arrest, Mr. Billman filed an intent to file a claim for VA disability benefits.

77. On January 9, 2026, the United States Department of Veterans Affairs granted service connection for Post-Traumatic Stress Disorder (PTSD) and Traumatic Brain Injury at a 70% disability rating, and secondary service connection

for migraines at 50%, resulting in a combined disability rating of 90%, effective October 10, 2025.

78. The VA's Rating Decision found that Mr. Billman's PTSD symptoms include anxiety, chronic sleep impairment, depressed mood, panic attacks, difficulty adapting to work or social relationships, and occupational and social impairment.

79. Mr. Billman continues to suffer from PTSD symptoms.

## CAUSES OF ACTION

### I. Violation of the Fourth Amendment – False Arrest (Against Defendant Lewis).

80. Plaintiff incorporates all above paragraphs.

81. The Fourth Amendment guarantees the right to be free from arrest and seizure in the absence of probable cause.

82. Defendant Lewis lacked probable cause to believe that Plaintiff had committed any crime at any time prior to seeking arrest warrants for Plaintiff or effectuating his arrest.

83. The warrants were facially deficient and were procured through deliberate or reckless misrepresentations and material omissions, such that no reasonably well-trained officer would have believed they established probable cause.

84. As a direct and proximate result of Defendant Lewis's conduct, Plaintiff was unlawfully arrested, transported to jail, and deprived of his liberty. He suffered emotional distress, reputational harm, and financial losses.

## II. Violation of the Fourth Amendment – Unlawful Detention (Against Defendant Lewis).

85. Plaintiff incorporates all above paragraphs.

86. The Fourth Amendment prohibits the continued detention in the absence of probable cause or other lawful justification.

87. Because there was no probable cause for Plaintiff's arrest, his five-day pretrial detention constituted a continuing violation of his Fourth Amendment rights.

88. Defendant Lewis caused and prolonged Plaintiff's detention by transporting him to jail and maintaining the charges without reasonably trustworthy information establishing probable cause.

89. As a direct and proximate result, Plaintiff suffered loss of liberty, physical and emotional distress, including aggravation of a service-connected PTSD condition, and financial harm.

## III. Violation of the Fourth Amendment – Malicious Prosecution (Against Defendant Lewis).

90. Plaintiff incorporates all above paragraphs.

91. Defendant Lewis initiated and continued criminal proceedings against Plaintiff by swearing out Affidavits of Complaint and obtaining arrest warrants, thereby causing Plaintiff to be seized and held pursuant to legal process.

92. Those criminal proceedings were initiated and sustained without probable cause and based on Affidavits and reports that contained deliberate or reckless misrepresentations and omitted material exculpatory facts.

93.     The criminal prosecution terminated in Plaintiff's favor when all charges were dismissed by *nolle prosequi*.

94.     As a direct and proximate result of Defendant Lewis's conduct, Plaintiff suffered a deprivation of liberty apart from his initial arrest, emotional distress, reputational harm, financial losses, and other damages.

## IV. Violation of the Fourteenth Amendment – Fabrication of Evidence (Against Defendants Lewis and Thompson)

95.     Plaintiff incorporates all above paragraphs.

96.     Plaintiff had a clearly established right under the Fourteenth Amendment to be free from criminal proceedings based on evidence that government officials deliberately fabricated.

97.     Defendant Lewis deliberately and recklessly misrepresented the content and significance of the Crosseyed Cricket surveillance footage in a supplemental Incident Report in order to bolster the charges against Plaintiff.

98.     Defendant Thompson deliberately and recklessly attempted to procure fabricated corroboration of those charges by presenting falsified or misleading paperwork and attempting to induce employees to authenticate it as accurate evidence against Plaintiff.

99.     Defendants' fabrication of evidence and attempts to manufacture corroboration were used or intended to be used to initiate and sustain criminal proceedings against Plaintiff.

100.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered a continuing deprivation of liberty, emotional distress, reputational harm, and other damages.

## **PRAYER FOR RELIEF**

101.    Plaintiff respectfully demands judgment against Defendants for compensatory damages as determined by the jury and for costs and attorney fees in bringing this action under 42 U.S.C. § 1988.

102.    Plaintiff further seeks punitive damages against Defendants Lewis and Thompson in their individual capacities, as their conduct was motivated by evil intent or undertaken with reckless and callous indifference to Plaintiff's clearly established constitutional rights.

Respectfully submitted,

DRS LAW

/s/ _David Anthony Smith_
David Randolph Smith, TN BPR#011905
David Anthony Smith, TN BPR#041695
Dominick R. Smith, TN BPR # 028783
Christopher W. Smith, TN BPR #034450
1913 21st Avenue South
Nashville, Tennessee 37212
(615) 742-1775 phone
(615) 742-1223 fax
drs@drslawfirm.com
das@drslawfirm.com
dom@drslawfirm.com
csmith@drslawfirm.com

15